UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

YONNIE BAILEY, :
:
       Petitioner :
: CIVIL NO. 1:CV-00-2184
   v. :
: (Judge Caldwell)
JAKE MENDEZ, :
:
       Respondent :

MEMORANDUM

I. Introduction.

    Yonnie Bailey, an inmate currently confined at the Allenwood United States Penitentiary ("USP-Allenwood"), White Deer, Pennsylvania, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Named as respondent is Jake Mendez, warden at USP-Allenwood.

    Briefly stated, the petition states that Bailey is presently in federal custody and is subject to an illegal detainer lodged by the Pennsylvania Board of Probation and Parole ("PBPP") because it failed to hold a timely revocation hearing. (Doc. 1 at p. 3). Further, he contends that the Bureau of Prison's ("BOP") consideration of this invalid detainer in determining his classification score improperly denies him "participation in programs in the BOP that would possibly shorten his incarceration time." (Id. at p. 4).

    For the reasons that follow, the petition will be dismissed.

II.  Background.

The relevant facts of this case may be summarized as follows: On June 1, 1993, while on state parole, Bailey was arrested and charged with Interference with Commerce by Robbery (Aiding and Abetting), Possession of a Firearm by a Convicted Felon, and for Use of a Firearm During a Crime of Violence in connection with his involvement in a robbery of a Philadelphia jewelry store. (Doc. 8, Respondent's Record in Support of Its Response to Habeas Corpus Petition, R. 2). A detainer was lodged by the PBPP against Bailey on July 8, 1993. That detainer and corresponding parole violation warrant remain active today. (Id. at R. 22).

On September 9, 1993, Bailey pled guilty to all federal counts. On March 8, 1994, he was sentenced to an aggregate term of imprisonment of 132 months; a three-year term of supervision, 150-dollar felony assessment; and restitution in the amount of forty thousand dollars. (Id. at R. 24). Bailey has a projected release date of April 4, 2003, via Good Conduct Time Release. (Id. at R. 2).

After his arrest on the new federal charges, Bailey was held at the Philadelphia Detention center for approximately two months, and then transferred to the Holmesburg County Jail where he remained until he was transferred to the federal Correctional Facility in Fairton, New Jersey, on March 17, 1994.

On January 13, 1994, after entering his guilty plea to the new federal charges, Bailey signed a PBPP waiver to have his state parole revocation hearing before a single examiner in lieu of a full board. A revocation hearing was scheduled for March 15, 1994, but it never took place. (Doc. 1). Bailey claims prior to his transfer to a federal facility he was available to the PBPP for his revocation hearing, but they elected not to hold it. (Id., ¶10(b)). Bailey contends the PBPP lost jurisdiction over him as a result of their procedural default in failing to conduct his revocation hearing within the requisite 120 days from the date of his guilty plea. Continuing with this logic, Bailey suggests that any consideration of the invalid warrant by the BOP is improper.

III. Discussion.

Bailey is currently housed in a federal facility and is serving his sentence imposed as a result of the conviction which gave rise to the PBPP detainer at issue. Bailey filed his habeas corpus petition pursuant to § 2241. He contends that the BOP has improperly considered an invalid state parole resulting in an inflated classification score denying him participation in programming that "may" shorten his federal sentence. This claim has two obvious components: (1) Bailey's challenge of the state

parole board's detainer; and (2) the BOP's consideration of this warrant. We will discuss each issue in turn.

   A.   Exhaustion.

Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity, but the execution of his sentence. See U.S. v. Addonizio, 442 U.S. 178, 185-88(1979) (holding that section 2255 authorizes challenges to the lawfulness of a federal sentence, not to the lawfulness of the performance of judgment and sentence).

"Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." Mascot v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981). Exhaustion is required for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Mascot, 98 F.3d at 761-62.

The BOP has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment.

-4-

28 C.F.R. §§ 542.10-542.19. This system contemplates an informal attempt at resolution of the issue followed by formal attempts at resolution via appeal, on the appropriate forms, to the Warden, then the Regional Director, and finally, the General Counsel. Time limits for filing and responding are established at each level of review and extensions of time for filing based on good cause are available.

With respect to his claims against the BOP, the named respondent, the BOP contends Bailey's claim should be dismissed as he has failed to pursue administrative remedies prior to initiating his habeas petition. Bailey admits he did not file an administrative complaint with the BOP related to its consideration of the allegedly invalid detainer for classification and programming purposes. Bailey contends exhaustion is not required when it would be futile as the parties agree the BOP "has no authority over the Pennsylvania Board of Probation and Parole and its actions in this case." (Doc. 7, p. 10). While this may be true with respect to Bailey's challenge to the actual validity of the warrant, Bailey's supposition fails when applied to Bailey's claims that the BOP has somehow misclassified him, resulting in the denial of program participation that he believes negatively impacts on his federal release date. He could assert that claim administratively. Thus, it appears that the Warden, the Regional

-5-

Director, and the General Counsel have not been afforded a proper opportunity to assess the merits of the instant claim. Since Bailey has not exhausted his administrative remedies, the petition against the BOP should be dismissed without prejudice.

With respect to his claims against the PBPP, the issue as to the appropriate path his exhaustion efforts would take is not as clear. A Commonwealth detainer order is not final agency action, and therefore, challenges to detainers do not come within the Commonwealth Court's appellate jurisdiction. Bronson v. Board of Probation and Parole, 491 Pa. 549, 421 A.2d 1021 (1980), *certiorari denied*, 450 U.S. 1050(1981). However, it may come before the court in its original jurisdiction as a mandamus action or lie in the jurisdiction of the court of common pleas as a habeas corpus action depending on the nature of the pleading. See McGriff v. Commonwealth of Pennsylvania, 149 Pa. 638, 641, 613 A.2d 688, 689(Pa. Cmwlth. 1992). A petition seeking mandamus must allege a legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate remedy at law. See Kester v. Pennsylvania Board of Probation and Parole, 148 Pa. 29, 609 A.2d 622 (Pa. Cmwlth. 1992).

Based on Bailey's present habeas petition, it appears that his action sounds in mandamus before the Commonwealth Court's original jurisdiction as he alleges the PBPP failed to hold a hearing

-6-

mandated by the law. That being said, the only information we have before us relating to Bailey's state exhaustion efforts are found in his petition. Bailey claims to have filed a mandamus action before the Commonwealth Court of Pennsylvania which denied his petition. (See Doc. 1, p. 5). Thus, for the purposes of our consideration of his petition today, we will presume he has exhausted his available state court remedies and turn to the merits of his petition.

    B.    <u>Validity of the Pennsylvania Board of Probation and Parole's Detainer against Bailey</u>.

Bailey contends that the PBPP's failure to hold his parole revocation hearing within 120 days as set forth in 37 Pa. Code §71.4(1) after receiving official verification of his guilty plea/conviction, divests the PBPP of jurisdiction over him and nullifies its pending detainer. The PBPP contends Bailey's parole revocation need not be held within 120 days because he was in prison, albeit county prison, serving time for the new charges and thus unavailable for his hearing. Bailey argues he was not transferred to a federal facility until <u>after</u> the scheduled date for his parole revocation hearing.

The Pennsylvania Board of Probation and Parole must conduct a parole revocation hearing within the time prescribed by 37 Pa. Code.§ 71.4(1). Failure to do so results in the dismissal of the parole violation charges with prejudice. See <u>Williams v.</u>

-7-

Pennsylvania Board of Probation and Parole, 751 A.3d 703, 705 (2000), appeal after remand, 757 A.2d 436 (Pa. Cmwlth. 2000). It is well established that this 120-day period does not start to run until the Board acquires jurisdiction over the parolee. See 37 Pa. Code.§ 71.4(1).[1]

The point of contention in this case is whether or not the PBPP obtained jurisdiction, within the meaning of 37 Pa. Code 71.4,

---

[1] 37 Pa. Code 71.4, Conviction for a New Criminal Offense, reads as follows:

> The following procedures shall be followed before a parolee is recommitted as a convicted parole violator:
>
> (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:
>
> > (i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-state, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with Commonwealth ex rel. Rambeau v. Rundle, 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of official verification of the return of the parole to a State correctional facility.
> >
> > (ii) A parolee who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the Rambeau decision shall be deemed to be within the jurisdiction of the Department of Corrections as of the date of the waiver.

-8-

over Bailey at either the time of his September 1993 guilty plea to the new federal charges, or in January 1994 when he signed the requisite waiver allowing his hearing to take place before a sole examiner. The PBPP suggests that Bailey was in continuous federal custody from the point of his arrest on new federal charges in 1993 until the point of transfer to a federal facility on March 17, 1994, and thus outside of its jurisdiction to hold his revocation hearing. The PBPP relies upon Edwards v. Pennsylvania Board of Probation and Parole, 751 A.2d 717 (Pa. Cmwlth. 2000), to support this assertion. In Edwards, a federal detainee petitioned for writ of mandamus directing the PBPP to remove a detainer warrant filed against him as a convicted parole violator based upon the Board's failure to hold a timely revocation hearing. Edwards while on state parole was arrested for federal wire fraud charges. He was arrested and incarcerated as a pre-trial detainee pursuant to these charges. The PBPP lodged a detainer against him. Eventually he was convicted and sentenced to federal prison. While in federal prison he was indicted on federal money laundering charges. Upon being paroled from the wire fraud charges, he was arraigned and incarcerated in county jail pursuant to the new federal charges. While in county jail, Edwards signed a waiver of the right to a full-panel revocation hearing. Edwards was eventually returned to federal prison to serve his time on the new money laundering

charges without a Pennsylvania parole revocation hearing taking place. Edwards, similar to Bailey, contended that his waiver of his right to a full panel revocation hearing gave the PBPP jurisdiction over him and that the PBPP had the duty to hold a revocation hearing within 120 days pursuant to Title 37 Pa. Code § 71.4.

After consideration of § 71.4 and § 71.5[2], the Court held that Edward's waiver, did not alter the fact that he was not in the state's jurisdiction during the time he was held in county jail. The Court held that § 71.4(1)(ii) applied only to state and county prisoners confined in county correctional institutions, not to federal prisoners. Edwards, 571 A.2d at 719. The Court further held that as a federal detainee, Edward's waiver of his right to a full-panel hearing did not trigger the 120-day period under § 71.4(1). Id. The PBPP argues the same rationale should apply to the case at bar.

Bailey argues that Edwards is distinguishable from his situation as Edwards was in continuous federal custody and the PBPP Parole warrants had not been executed, where in contrast, he "was

---

[2] 37 Pa. Code § 71.5 (a) reads:

If the parolee is in custody in another state, or in Federal custody, the Board may lodge its detainer but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth.

-10-

arrested while visiting his parole officer." (Doc. 14, p. 2). He claims on January 13, 1994, the PBPP "executed the violator warrant" against him. (Id). He also contends that even if his waiver does not trigger the running of the 120-day period, the PBPP's notification of his guilty plea would. Finally, Bailey suggests the PBPP's scheduling of a March 15, 1994, parole revocation hearing is further evidence of the Commonwealth's exercise of its jurisdiction over him. We disagree.

Contrary to Bailey's assertion, and consistent with Edwards, there is nothing in the record to suggest Bailey was incarcerated pursuant to a PBPP action. Specifically, there is nothing in the record to support the finding that the PBPP's warrant has ever been executed. The fact that the PBPP's July 1993 detainer and attached warrant are still active, support this finding. The fact that Bailey was arrested while visiting his parole agent is of no import here as it does not suggest he was not arrested and held as a pre-trial *federal* detainee within a county facility, similar to Edwards. As the Edwards court held, Bailey's signing of the parole waiver itself, also does not allow Bailey or the Commonwealth of Pennsylvania to undermine the federal government's jurisdiction over him in favor of the Commonwealth. Finally, the mere physical location of Bailey within a county facility, does not bestow state jurisdiction over him for similar reasons as also evidenced by

Edwards. Bailey has not submitted any evidence to demonstrate he was detained, albeit within county facilities, pursuant to any action taken by the PBPP. Thus, his loss of liberty was not the result of the PBPP's actions. Accordingly, there has yet to be a triggering event related to his parole revocation that would start the 120-day period proscribed by 37 Pa. Code 71.4(1). See Morrissey v. Brewer, 408 U.S. 471, 488 (1972); Moody v. Daggett, 429 U.S. 78 (1976).[3]

Thus, upon review of the record and relevant case law, there is nothing to suggest Bailey's detention, prior to transfer to the federal facility, was not entirely related to his new federal charges or that the Commonwealth of Pennsylvania obtained jurisdiction over him for the purpose of triggering the 120 days as a result of his January 1994 waiver. Accordingly, the detainer is valid and active.

---

[3] A parole "revocation hearing must be tendered within a reasonable time after the parolee is taken into custody," Morrissey v. Brewer, 408 U.S. 471, 488 (1972). However, in Moody v. Daggett, 429 U.S. 78 (1976), the Supreme Court held that the requirement for a timely revocation hearing contemplated under Morrissey did not apply where the individual has already been lawfully deprived of his liberty and is already in custody on a criminal conviction because the "present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from his two [subsequent] ... convictions." Moody, 429 U.S. at 86. Thus, it is clear that the *execution* of the warrant and custody under that warrant, not just its issuance, is the operative event triggering any loss of liberty attendant upon parole revocation. Id. at 86, n.7.

-12-

Bailey's petition for writ of habeas is denied.[4] An appropriate order is attached.

*William W. Caldwell*
WILLIAM W. CALDWELL
United States District Judge

Date: March 27, 2002

---

[4] Although we previously dismissed Bailey's claims related to the BOP's consideration of the detainer due to his failure to exhaust available administrative remedies, these claims are without merit. To the extent that Bailey claims that the detainer is being used by BOP officials to calculate his custody and classification level, thereby affecting his pre-release program participation, he has no right to relief. See Posey v. Dewalt, 86 F. Supp.2d 565 (E.D. Va. 1999)(finding no constitutional violation by BOP in considering Virginia state detainer in security classification of prisoner); Bolden v. Murray, 841 F. Supp. 742 (E.D. Va. 1994)r (finding no due process violation by Virginia prison officials in considering New York state detainer in determining custody status which in turn is used to determine parole status); Gregory v. State of New York Parole Commission, 496 F. Supp. 748 (M.D. Pa. 1980)(finding no due process violation in lodging parole violator warrant as detainer, thereby precluding petitioner from consideration for half-way house placement).

-13-